**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SEARS, ROEBUCK AND CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 cv 2838 |
| | ) | |
| TYCO FIRE PRODUCTS LP; | ) | Judge Ronald A. Guzman |
| SIMPLEXGRINNELL LP; STAR | ) | |
| SPRINKLER, INC., | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Susan E. Cox, Magistrate Judge

Sears, Roebuck and Co. ("Sears") filed breach of contract and product liability claims against Simplex Grinnell, LP ("Simplex") and Tyco Fire Products LP ("Tyco") for sprinklers that prematurely activated in seven Sears stores located in six states throughout the United States. Tyco and Simplex have filed a motion for summary judgment, and within that motion they have requested that the Court sever the seven claims into separate trials. Defendants both argue that a jury would get confused in applying the different laws of six states in one trial. Sears contends that severing the claims would result in duplicate trials of the same legal issue and unnecessarily waste judicial resources. The district court has referred this specific question, of whether to sever the claims for separate trials, to us for consideration. For the reasons discussed herein, the request to sever the claims for trial is denied [dkt. 110, exh. 1].

**II.     BACKGROUND FACTS**

Tyco, a manufacturing company, manufactured F950 "Duraspeed" sprinklers in the mid-

1970s and early 1980s.[1] Sears, a nationwide retail store, had these F950 sprinklers installed in their stores across the country.[2] On January 1, 2003 Simplex, an inspection company, and Sears entered into two contracts: (1) the National Fire Protection Service Agreement ("Protection Agreement") and (2) the National Sprinkler Identification Service Agreement ("Identification Agreement").[3] Under the Protection Agreement, Simplex was to provide fire protection services to all Sears stores nationwide,[4] including inspecting the stores' sprinkler systems,[5] determining if those sprinkler systems were in satisfactory condition,[6] and recommending how to correct any deficiencies.[7] The Protection Agreement's term lasted through September 30, 2007.[8] Under the Identification Agreement, Simplex was to provide sprinkler identification services to all Sears stores nationwide,[9] including verifying the existence or non-existence of sprinkler heads covered under the Central Sprinkler Company Voluntary Replacement Program, presenting a Proof of Claim Form for any sprinklers covered in the program, or presenting a letter to Sears when no sprinklers covered in the program were found.[10] The Identification Agreement's term lasted through December 31, 2005.[11] Both the Protection and Identification Agreements contain the same choice of law provision which states "[t]his Agreement shall be deemed to be entered into and shall be interpreted and construed in accordance with the laws of the State of Illinois without reference to rules governing choice of

---

[1] Pl.'s Brief in Support of Consolidating All Claims at p. 6.
[2] Second Amd. Compl. at ¶30.
[3] *Id.* at ¶1.
[4] *Id.* at ¶13.
[5] *Id.* at Ex. 1, p. 30, line 2.
[6] *Id.*
[7] *Id.* at Ex. 1, p. 30, line 19.
[8] *Id.* at Ex. 1, p. 58.
[9] *Id.* at ¶15.
[10] *Id.* at Ex. 2, p. 9.
[11] *Id.* at Ex. 2, p. 5, § 6.1.

law."[12]

In 2007 and 2008, F950 sprinklers prematurely activated in various Sears stores throughout the United States, causing water damage to Sears' property.[13] The F950 sprinklers each have the same type of soldering material holding together the triggering mechanism which prematurely activated.[14] The Sears stores were air conditioned[15] and the F950 sprinklers were kept at normal and consistent temperatures and endured a normal level of mechanical stress.[16] No fire, smoke, or any similar event was occurring within the stores when the sprinklers activated.[17] Sears claims that it incurred over $300,000 in expenses relating to water damage, lost profits, and repair of its sprinkler systems.[18] There are seven separate incidents at issue that occurred in the following Sears locations: (1) West Mifflin, Pennsylvania; (2) Baton Rouge, Louisiana; (3) Charlottesville, Virginia; (4) Curpertino, California; (5) Houston, Texas; (6) Midland, Texas; and (7) Manchester, New Hampshire.

Sears filed five counts in its complaint against Simplex and Tyco to recoup its lost expenses. Counts I and II are breach of contract claims against Simplex.[19] Count III is a negligence claim against Simplex.[20] Counts IV and V are negligence and strict liability claims, respectively, against both Simplex and Tyco.[21]

---

[12] *Id.* at Ex. 1, p. 7, § 8.5; *Id.* at Ex. 2, p. 7, § 8.5.
[13] *Id.* at ¶¶17-24.
[14] Pl.'s Brief in Support of Consolidating All Claims at Ex. 2, p. 2-3.
[15] *Id.* at p. 6.
[16] Second Amd. Compl. at 7.
[17] *Id.* at ¶¶17-26.
[18] *Id.* at ¶32.
[19] *Id.* at ¶¶33-42.
[20] *Id.* at ¶¶43-47.
[21] *Id.* at ¶¶48-59.

## III. DISCUSSION

We will address separately whether Sears' claims against Simplex or Tyco should be severed for trial. Federal Rule of Civil Procedure 42(a)(2) states that "[i]f actions before the court involve a common question of law or fact, the court may consolidate the actions."[22] Rule 42(b) further states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate . . . claims . . . ."[23] But before we address whether the claims should be severed, we must first determine what law governs Sears' claims against Simplex and Tyco.

### A. Sears' Breach of Contract Claims Against Simplex

Sears claims Simplex violated the Protection Agreement, which mandates that Illinois law govern disputes arising from the contract. The Protection Agreement states "[t]his Agreement shall be deemed to be entered into and shall be interpreted and construed in accordance with the laws of the State of Illinois without reference to rules governing choice of law."[24] Simplex argues that the Protection Agreement does not apply to Sears' lawsuit because the Protection Agreement began in 2003, about twenty years after the F950 sprinklers were manufactured and first used at Sears stores (between 1978 and 1982). Simplex further argues that because the Protection Agreement never specifically mentions F950 sprinklers and does not concern F950 sprinklers, Sears is inappropriately "piggybacking" an unsupported breach of contract claim onto what is solely a products liability lawsuit.

Simplex's unsupported arguments demonstrate a lack of understanding of the Protection Agreement. Under the Protection Agreement, Simplex was obligated to "inspect and determine if

---

[22]Fed. R. Civ. P. 42(a)(2).
[23]Fed. R. Civ. P. 42(b).
[24]Second Amd. Compl. at Ex. 1, p. 7, § 8.5.

the fire sprinkler system is in service and in satisfactory condition"[25] and to "[c]ompile a complete report of inspection, explain any deficiencies, and recommend corrective action to be taken . . . ."[26] The Protection Agreement's language indicates Sears' breach of contract claims are related to the contract because Sears argues that the sprinklers were in unsatisfactory condition and that Simplex failed to notify Sears of the sprinklers' deficiencies. The Protection Agreement's Illinois choice of law provision, therefore, governs Sears' breach of contract claims against Simplex.

### B. Sears' Product Liability Claims Against Simplex

If Sears' product liability claims are dependent on the Protection Agreement, then the Protection Agreement's Illinois choice of law provision also governs those claims. "Tort claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause."[27] In determining whether a tort claim is dependent on a contract, "courts consider whether: (1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract."[28] Here, Sears' tort claims are based on its contractual relationship with Simplex, where Sears claims Simplex was negligent in not detecting and notifying Sears of its sprinklers' deficiencies. Without the Protection Agreement, Sears would be unable to file product liability claims against Simplex because the product liability claims concern whether Simplex performed its contractual obligations. We find that Sears' product liability claims against Simplex are dependent on the Protection Agreement and are also subject to its choice of law provision, thus, requiring the application of Illinois law. And because a jury will only apply Illinois

---

[25]*Id.* at p. 30, line 2.
[26]*Id.* at p. 30, line 19.
[27]*Facility Wizard Software Inc. v. Se. Technical Services*, LLC, 647 F. Supp. 2d 938, 943 (N.D. Ill. 2009).
[28]*Id.*

law to Sears' claims against Simplex, there is no compelling reason to sever the claims.

**C. Sears' Claims Against Tyco**

Tyco, however, was not a party to the Protection Agreement. In fact, Sears and Tyco both agree there is no contractual relationship between them and, thus, no choice of law provision that mandates that a particular state law governs Sears' product liability claims against Tyco. Consequently, we must first determine which state laws will govern Sears' claims against Tyco before deciding whether the claims should be severed.

Federal courts exercising diversity jurisdiction, like in the present case, apply the law of the forum state in which it sits.[29] Illinois's choice of law provision applies to Sears' claims against Tyco because Sears' lawsuit sits in the United States District Court of the Northern District of Illinois. Illinois law applies the "most significant contacts" test to determine what substantive law applies to tort cases. Here, courts consider: (1) the place where the injury occurred; (2) the place where the conduct occurred; (3) the domicile of the business of the parties; and (4) the place where the relationship of the parties is centered.[30] Applying these factors to the seven incidents at issue, the states that have the "most significant contact" with each incident are those states where the particular store is located. For example, because the Sears store located in West Mifflin, Pennsylvania suffered water damage in Pennsylvania due to its sprinkler prematurely activating within the store, Pennsylvania has the "most significant contact" with that particular incident. Therefore, the laws of Pennsylvania, Louisiana, Virginia, California, Texas, and New Hampshire will be applied to the incidents located within those states, respectively.

If the laws of six states must be applied to seven different incidents, the question then

---

[29] *Goldberg v. Metronic, Inc.*, 686 F.2d 1219, 1225 (7th Cir. 1982).
[30] *Ingersoll v. Klein*, 262 N.E.2d 593, 596 (1970).

becomes whether it is prudent to sever the claims into separate trials. A court may consolidate actions if those actions "involve a common question of law or fact."[31] However, a court may order separate trials for "convenience, to avoid prejudice, or to expedite and economize."[32] The party seeking separate trials "has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials . . . ."[33] "Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice."[34]

Tyco first argues that the claims should be severed because the product liability laws of Pennsylvania, Louisiana, California, Virginia, New Hampshire, and Texas are incompatible, and asking a jury to apply six states' laws would confuse a jury and prejudice Tyco. Tyco's argument is not without merit as the six states' product liability laws cover a wide spectrum. At one extreme, Pennsylvania does not incorporate negligence concepts into its strict products liability analysis.[35] A plaintiff in Pennsylvania must demonstrate that the product was (1) defective; (2) the defect caused the injury; and (3) the defect existed at the time it left the manufacturer's control.[36] Pennsylvania juries are not allowed to consider whether the manufacturer exercised reasonable care in creating a product that was reasonably safe for its intended use or any other reasonably foreseeable purpose.[37]

Virginia, at the other extreme, does not allow a strict liability analysis for product liability

---

[31] Fed. R. Civ. P. 42(a).
[32] Fed. R. Civ. P. 42(b).
[33] *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).
[34] *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992).
[35] *See Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 541 (Pa. 2009).
[36] *Id.* at 546-47.
[37] *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 900 (Pa. 1975).

claims. Instead, Virginia *only* imposes product liability through negligence.[38] In Virginia, "[a] manufacturer has a duty to use ordinary care to design a product that will be reasonably safe for its intended purpose and for any other reasonably foreseeable purpose. If a manufacturer fails to perform this duty, then it is negligent."[39] The other four states' product liability laws fall in between the Pennsylvania and Virginia extremes.[40]

Second, Tyco notes that the six states mandate different comparative negligence laws to product liability actions, which also warrant severance. Pennsylvania and Virginia are again on opposite ends of the spectrum. In Pennsylvania, a plaintiff's comparative negligence, no matter to what extent, does not reduce a defendant's liability.[41] That is, even if a plaintiff is found to be 99% at fault, the defendant is still liable for the *entire* damages. In Virginia, on the other hand, any negligence by the plaintiff bars all recovery.[42] That is, if a plaintiff is found to be 1% at fault, the defendant is not liable for *any* of the damages. The other four states apply differing comparative negligence laws that again fall in between the Pennsylvania and Virginia extremes.[43]

Third, Tyco argues that the six states each have different adverse inference instructions that would confuse a jury. We must first note that there is no indication that - or claim by Tyco that - an adverse inference instruction will even be used in this case. So this is Tyco's hypothetical argument as to why these claims must be separated into distinct trials. We will, nonetheless, briefly address its argument. Tyco first notes that an adverse inference may be appropriate in the Louisiana,

---

[38]*See Garrett v. I.R. Witzer Co.*, Inc., 518 S.E.2d 635, 637 (Va. 1999).
[39]2-34 Virginia Model Jury Instructions – Civil Instruction No. 34.140.
[40]*See, e.g.*, *Bic Pen Corp. v. Carter*, 251 S.W.3d 500, 509 (2008); BAJI 9.00.3; La. Rev. Stat. Ann. § 9:2800.54.A (2010); New Hampshire Civil Jury Instruction § 23.1.
[41]*Smith v. Weissenfels, Inc.*, 657 A.2d 949, 953 (Pa. Super. Ct. 1995).
[42]*Ford Motor Co. v. Bartholomew*, 297 S.E.2d 675, 680-81 (Va. 1982).
[43]*See, e.g.*, La. Civ. Code Ann. Art. 2323.A (2010); N.H. Rev. Stat. § 507-d (2010); Tex. Civ. Prac. & Rem. Code. Ann. § 33.002 (2010); *Daly v. Gen. Motors Corp.*, 575 P.2d 1162, 1168 (Cal. 1978).

Virginia, New Hampshire, and California incidents, where Sears has not produced the allegedly-defective triggering mechanisms. But Tyco claims that it may not be appropriate in the Pennsylvania and Texas incidents where Sears has produced the mechanisms. In Louisiana, an adverse inference instruction is used if: (1) the evidence was intentionally destroyed for the purpose of depriving the opposing party of its use; (2) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; and (3) there is no adequate explanation for the failure to produce the evidence.[44] Virginia law differs, allowing an adverse inference when the evidence was destroyed either intentionally *or* negligently, and when at the time the evidence was destroyed a "reasonable person . . . should have foreseen that the evidence was material to a potential civil action."[45] Tyco argues that a jury will get confused in applying an adverse inference in only some of the incidents, and that not applying the inference to all the incidents will dilute the inference when the inference is appropriate. But because this is only a possible issue at trial, and because Judge Guzman has not ruled on whether an adverse inference instruction is appropriate at all, we will not base our ruling here on the hypothetical that such an instruction *might* be used.

Fourth and finally, Tyco argues that allowing all of the incidents to be heard in one trial would violate a fundamental principle of evidence: that is, evidence from one incident is only admissible if that incident is substantially similar to the issue at trial.[46] Tyco argues that because the sprinklers activated at different times, in different store locations, after being exposed to different climates, and after receiving different care and maintenance for different durations of use, some of

---

[44] *Everhardt v. La. Dep't. of Transp. and Dev.*, 978 So. 2d 1036, 1044, (La. Ct. App. 4th Cir. 2008).
[45] *Wolfe v. Va. Birth-Related Neurological Injury Comp. Program*, 580 S.E.2d 467, 475 (Va. Ct. App. 2003) (quoting *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270-72 (Ill. 1995)).
[46] *See, e.g.*, *Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-22 (Cal. 1974); *Bailey v. Oliver*, 504 So.2d 152, 155-56 (La. Ct. App. 2d Cir. 1987); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 138 (Tex. 2004); *Jones v. Ford Motor Co.*, 559 S.E.2d 592, 602 (Va. 2002).

the incidents may not be substantially similar to each other. Consequently, Tyco believes that allowing a jury to hear evidence from multiple incidents, some of which are not substantially similar, would violate a fundamental principle of evidence.

Sears argues, in response, that each of the incidents are substantially similar. In each incident, the disputed sprinkler was a F950 "Duraspeed" sprinkler manufactured by Tyco in the mid-1970s and early 1980s. The F950 sprinklers each have a similar design and the same type of soldering material holding together the triggering mechanism. The sprinklers were installed in air conditioned Sears stores and were subjected to normal and consistent temperatures and endured a normal level of mechanical stress. Each incident occurred in 2007 or 2008, where the sprinklers prematurely activated without the presence of fire or smoke and caused Sears to suffer water damage, lost profits, and to repair its sprinkler systems. In every incident, Simplex was under contract to inspect Sears' sprinkler systems, identify any defective sprinklers, and recommend how to correct defective sprinklers. The legal issues of whether Simplex owed a duty to notify Sears that its F950 sprinklers were defective, whether Simplex actually failed to identify the defective sprinklers and notify Sears, whether Tyco manufactured defective sprinklers, and what damages should be awarded to Sears, are the same in each incident.

It is undeniable that there are a plethora of similarities in the facts and legal issues of the incidents. Tyco merely points out inconsequential differences, such as the sprinklers activating at different times or the sprinklers having different durations of use. But without providing any explanation as to *why* such differences make the incidents distinct enough to warrant separate trials, we are disinclined to conclude that keeping these claims consolidated somehow violates a fundamental principle of evidence.

Sears also cites *Magnavox Company v. APF Electronics, Inc.*[47] to support keeping the claims consolidated. In *Magnavox*, the plaintiff brought three patent claims against the defendants.[48] The court found that the patents were similar enough that the legal questions of whether each patent was infringed would be the same.[49] The court also found that the legal questions of the three patents' validity was relevant to the defendants.[50] Therefore, the court held there was a common question of law and fact and consolidated the claims.[51] Sears points out that, like in *Magnavox*, there are numerous common questions of law and fact against Tyco that favor consolidating the claims for trial.

Sears does not, however, dispute Tyco's argument that the product liability, comparative negligence, and adverse inference laws of the six states are incompatible. Sears simply responds that any possible jury confusion can be fixed through jury instructions. Sears instead focuses on the fact that severing the claims would result in duplicate trials on the same issue and promote judicial waste. Because the incidents each involve identical facts and the same legal issues, severing the claims will result in the parties relitigating the same claim in six separate trials. The same discovery materials will have to be produced for each trial. Because most of the relevant witnesses and experts are the same for each incident, the same witnesses and experts will have to give testimony during both discovery and trial. As a result, the same witnesses and experts will have to travel to six trials, located in states all across the country, just to give identical testimony. Attorneys, clients, witnesses, and the court system will suffer significantly higher costs relitigating the same legal issues in six

---

[47] *Magnavox Co. v. APF Electronics, Inc.*, 496 F. Supp. 29, (N.D. Ill. 1980).
[48] *Id.* at 31-32.
[49] *Id.* at 32.
[50] *Id.*
[51] *Id.* at 33.

trials rather than one consolidated trial. Furthermore, separate trials could result in different juries reaching different conclusions on identical legal issues.

Courts strive to reduce the enormous costs that accompany litigation, especially when those costs are unwarranted. Tyco does not dispute Sears' argument that ordering six separate trials would result in significantly higher expenses for all parties and the court system. Furthermore, Tyco has not met its burden in showing that severing the claims would promote judicial economy. Instead we defer to the general principal that "[i]f plaintiff has sued two or more defendants for the same injuries, motions by the defendants that the claims against each of them be separately tried have usually been denied, even if the basis of liability was different so that there was a possibility of confusion."[52] While the jury may have some difficultly in applying multiple states' laws to separate incidents within one trial, we find that the exorbitant and unnecessary expense that would inevitably result in relitigating the same legal issues in six trials outweighs any benefit that would result in avoiding possible jury confusion.

## IV.  CONCLUSION

The Supreme Court has stated that "[o]ur theory of trial relies upon the ability of a jury to follow instructions."[53] Additionally, the Supreme Court has recommended that courts utilize special interrogatories to reduce jury confusion in complicated cases.[54] We adhere to the Supreme Court's belief that juries can competently follow instructions and that the use of special interrogatories can eliminate any possible confusion. Sears' claims against Simplex and Tyco will be consolidated in one trial in Illinois. Illinois law will govern all of Sears' claims against Simplex and the tort laws

---

[52] 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2389 (3d ed. 2010).
[53] *Opper v. U.S.*, 348 U.S. 84, 95 (1954).
[54] *See Griffin v. U.S.*, 502 U.S. 46, 61 (1991) (Blackmun, J., concurring).

of the state in which the disputed incidents occurred will govern Sears' claims against Tyco. The portion of defendants' motion to sever claims is, therefore, denied [dkt. 110, exh. 1].

**IT IS SO ORDERED.**

**ENTERED: August 17, 2010**

_____
UNITED STATES MAGISTRATE JUDGE
Susan E. Cox