**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SEARS, ROEBUCK AND CO. and KMART CORPORATION,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | **08 C 2838** |
| | ) ) | **Judge Ronald A. Guzmán** |
| **TYCO FIRE PRODUCTS LP, SIMPLEXGRINNELL LP and STAR SPRINKLER, INC.** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sears, Roebuck and Company and Kmart Corporation (collectively referred to herein as "Sears") filed suit against Tyco Fire Products LP and SimplexGrinnell LP for negligence and strict product liability and SimplexGrinnell LP for breach of contract.[1]  Defendants have moved for summary judgment.  For the reasons provided in this Memorandum and Opinion, the Court grants in part and denies in part the motion.

## Facts

This litigation arises out of the inadvertent activation of Model F950 fire sprinkler heads in Sears' stores throughout the country.  (Defs.' LR 56.1(a)(3) Stmt. ¶ 9.) Specifically, from May 15, 2007 to October 11, 2008, seven F950 sprinkler heads activated in the absence of fire at Sears' stores in Louisiana, Pennsylvania, Texas,

---

[1] The complaint is dismissed as to defendants Star Sprinkler, Inc. and Mealane Corporation because plaintiffs failed to serve these defendants within 120 days of filing their complaint as required by Federal Rules of Civil Procedure 4(m).

California, Virginia and New Hampshire. (*Id.* ¶¶ 11-12.) The sprinkler heads were manufactured by Grinnell Corporation and/or its successor Tyco Fire Products LP ("Tyco"). (*Id.* ¶ 8.) SimplexGrinnell, also owned by Tyco, installs and services sprinkler heads. (Pls.' LR 56(b)(3) Stmt. ¶ 34; Defs.' Ex. Q, Thomas McDonald Aff. 2-3.)

### A.    Sprinkler Heads

Plaintiffs' product claims are focused on the activation mechanism of the F950 sprinkler head. (Defs.' LR 56.1(a)(3) Stmt. ¶ 26.) The activation mechanism is made up of a dome-shaped heat collector which is soldered to a cup-shaped key. (*Id.* ¶¶ 19-20.) The soldered junction is coated with wax and a hook is riveted to the key. (*Id.* ¶ 20.) At the other end of the hook is a strut that runs the length of the sprinkler frame from the deflector to the base. (*Id.*) At the base end of the frame, the strut presses against a plug that holds back the water present in the sprinkler pipe. (*Id.*) When the solder melts or is otherwise broken, for example from voids in the solder, the heat collector separates from the key or cup which moves the hook, which in turn moves the strut, which frees the plug and thereby allows water to flow from the sprinkler pipe. (*Id.*)

Only two activation mechanisms were recovered from the seven activations at issue, one from a Sears' store in Texas and one from a Sears' store in Pennsylvania. (*Id.* ¶ 26.) Plaintiffs retained two experts, Gerald Uhland and Curt M. Freedman, to evaluate, among other things, the two recovered activation mechanisms. (*Id.* ¶ 27.) The experts testified that, because of deficiencies in the manufacturing process, the soldered junction (described above) between the heat collector and the key had voids and/or areas of

deficient bonding between the heat collector and the key, which caused the inadvertent activation of the sprinkler heads. (Pls.' LR 56(b)(3) Stmt. ¶¶ 6, 9.)[2] Specifically, Freedman's analysis included review of other F950 sprinkler heads that had prematurely activated, as well as examination of the fire protections systems, building features and surrounding circumstances of the premature sprinkler activations at the seven stores at issue in this litigation. (*Id.* ¶ 5.) Based on his analysis, Freedman testified that the F950 sprinklers "were defective due to deficiencies in the manufacturing process and/or deficiencies in quality control." (*Id.* ¶ 6.) He further testified that there is no data to support that the sprinkler heads activated from overheating, and that all other "causes of failure . . . have been ruled out through investigation." (*Id.* ¶ 7.)[3]

Uhland examined the recovered activation mechanisms, which he stated were manufactured between 1978 and 1982. (*Id.* ¶ 9.) Based upon his analysis of the mechanisms and discussions with Freedman, he opined that the mechanisms were defective due to improper soldering at the time of manufacture. (*Id.*) Uhland testified that a void space of one to five percent in the soldering was "usual" or "ordinary," and that based on his experience, he had observed premature activations with a void space of twenty to fifty percent. (*Id.* ¶ 10.) Freedman had found a fifteen percent void space for the sprinkler head examined from the Pennsylvania store. (*Id.* ¶ 4.) Uhland testified that Freedman's void numbers were conservative, and that he had understated the amount of void space for the two activation mechanisms at issue here, but his methodology and report were otherwise accurate. (*Id.* ¶ 11.)

---

[2] Although defendant disputes this fact, the dispute is unsupported by evidence in the record as required by Local Rule 56.1(b)(3)(B).

[3] *See* n.2.

**B.     Contracts**

On January 1, 2003, Sears and SimplexGrinnell, LP ("SimplexGrinnell") entered into two contracts, a National Fire Protection Service Agreement ("Protection Agreement") and a National Sprinkler Identification Service Agreement ("Identification Agreement"). (Defs.' LR 56(a)(3) Stmt. ¶ 39.)  Both Agreements will be discussed in more detail when the Court address plaintiffs' contract claims.

**Discussion**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the movant meets this burden, the non-movant cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  To succeed on a summary judgment motion, the evidence must be such "that [no] reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering the motion, the court must view all evidence in the light most favorable to the non-movant.  *Id.* at 255.

In their five count complaint, Plaintiffs allege that SimplexGrinnell is liable for breach of the Protection and Identification Agreements (Counts I & II) and for negligently performing its duties under both Agreements (Count III).  They further allege

that SimplexGrinnell and Tyco are liable under product liability theories of negligence (Count IV) and strict liability (Count V) for designing, manufacturing, testing, inspecting and distributing the allegedly defective sprinkler heads. Part I of this Opinion will address plaintiffs' tort based claims, while Part II will address plaintiffs' contract claims against SimplexGrinnell.

## I. Plaintiffs' Tort Claims

### A. Statutes of Repose

Defendants first argue that the statutes of repose in Virginia, New Hampshire and Texas bar plaintiffs' tort claims involving the stores in those states. (Defs.' Mem. Supp. Summ. J. 4-7.)[4] Defendants have the burden of establishing this affirmative defense. *Baker v. Poolservice Co.*, 636 S.E.2d 360, 366 (Va. 2006) (explaining that the statute of repose is an affirmative defense and therefore, the movant's burden to prove); *Nexen, Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 416 (Tex. App. Ct. 2006) (same); *see Beane v. Dana S. Beane & Co.*, 7 A.3d 1284, 1289 (N.H. 2010) (holding that defendant bears the burden of proving affirmative defenses).

Defendants have failed to establish that the Virginia statute of repose bars plaintiffs' claims. The Virginia statute of repose provides that:

> No action to recover for any injury to property . . . arising out of the defective and unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the . . .

---

[4] Magistrate Judge Cox has already addressed the choice-of-law issues in this case and has held that the substantive law of the state in which the store at issue is located applies to plaintiffs' claims against defendants except the claims against SimplexGrinnell that are based on its contractual agreement with Sears. *Sears, Roebuck & Co. v. Tyco Fire Prods. LP*, No. 08 CV 2838, 2010 WL 3274278, at *2 (N.D. Ill. Aug. 17, 2010).

construction of such improvement to real property more than five years after the performance . . . [of] such services and construction.

Va. Code. Ann. § 8.01-250. The statute does not apply to "manufacturer[s] [and] supplier[s] of . . . [the equipment at issue]." *Id.* The sprinkler heads are "equipment" under the statute of repose. *Royal Indem. Co. v. Tyco Fire Prods., LP*, 704 S.E.2d 91, 94 (Va. 2011).

The statute of repose does not bar plaintiffs' claims against Tyco because it manufactured the product at issue. § 8.01-250; (Pls.' LR 56(b)(3) Stmt. ¶ 34.) It is unclear, however, whether it applies to the claims against SimplexGrinnell. It is undisputed the SimplexGrinnell did not manufacturer the sprinkler heads, (Defs.' LR 56(b)(3)(B) Stmt. ¶ 22; Pls.' LR 56(b)(3) Stmt. ¶ 34; Defs.' Ex. Q, Thomas McDonald Aff. 2-3), but the record does not establish whether SimplexGrinnell supplied them to Sears. Even assuming the statute did apply to SimplexGrinnell, however, defendants have not established the date the sprinkler heads were installed and therefore, have not proven when the construction (or installation) was performed as required under the statute. Therefore, summary judgment is denied as to this issue.

Defendants have also failed to satisfy their burden with regards to the New Hampshire statute of repose, which provides that claims arising out of improvements to property must be brought within eight years of substantial completion of such improvement. N.H. Rev. Stat. Ann. § 508:4-b.[5] Defendants argue that the statute bars

---

[5] Plaintiffs argue that the statute of repose for product liability claims, not improvements to real property, applies here and, as such, defendants have no valid argument because the statute of repose for product liability claims has been held to be unconstitutional. *Heath v. Sears, Roebuck & Co.*, 464 A.2d 288, 295 (N.H. 1983). It is not clear whether the installation of sprinkler heads is an "improvement to real property," such that the statue of repose for such improvements applies in this case. However, the Court need not decide this issue because even if it did apply, defendants have not established that they installed the

plaintiffs' claims because Sears purchased the New Hampshire store in 1977. (Defs.' LR 56(b)(3) Stmt. ¶ 24.) This date alone, however, does not establish when the fire sprinklers were installed as required for the statute to apply. § 508:4-b. Therefore, defendants have failed to establish this affirmative defense.

The situation is different for the claims involving the Texas stores. The Texas statute of repose provides that "a claimant must commence a product liability action against a manufacturer or seller" within fifteen years "after the date of the sale of the product" by the manufacturer or seller, unless the "manufacturer or seller expressly warrants in writing" that the product has a safe "useful life longer than fifteen years," and then, in that case, the claimant must bring suit within the warranted time period. Tex. Civ. Prac. & Rem. Code Ann. § 16.012; *see Zaragosa v. Chemetron Invs., Inc.*, 122 S.W.3d 341, 345-46 (Tex. App. 2003). It is undisputed that Tyco manufactured the products at issue, and therefore the statute of repose applies to it. (Pls.' LR 56(b)(3) Stmt. ¶ 34.)

It is not clear, however, whether the statute applies to SimplexGrinnell. It is undisputed that SimplexGrinnell did not manufacture the products at issue. (*Id.*) Therefore, for the statute to apply, SimplexGrinnell must qualify as a seller. The statute defines a seller as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." § 16.012. It is undisputed that

---

sprinkler heads at issue or the date that such installation started, was substantially complete or was finished, and therefore have not satisfied their burden. § 508:4-b(II) (stating the term "'substantial completion'" means that construction is sufficiently complete so that an improvement may be utilized by its owner or lawful possessor for the purposes intended.").

SimplexGrinnell is in the business of installing and servicing sprinkler heads, but whether they place such sprinkler heads in the "stream of commerce" by selling them as part of the installation process is unclear. (Pls.' LR 56(b)(3) Stmt. ¶ 34; Defs.' Resp. Pls.' LR 56(b)(3) Stmt ¶ 34.) Therefore, defendants have not established this affirmative defense with regards to the claims against SimplexGrinnell.

The situation is different with respect to the claims against Tyco, however, because the record shows that the sprinklers were sold more than fifteen years before the suit was filed. Plaintiffs judicially admitted the "date of the sale" by saying that they commenced this action "approximately twenty-eight years after the sale of the defective sprinklers." (Pls.' Mem. Opp'n Defs.' Mot. Summ. J. 16.); *Chow v. Aegis Mortg. Corp.*, 185 F. Supp. 2d 914, 916 (N.D. Ill. 2002) (stating that a judicial admission is a statement, including a representation in a brief, made in the course of "judicial proceedings, pleadings, or stipulations that is binding upon the party making it.") (internal quotations and citations omitted); *see United States v. One Heckler-Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir. 1980) (holding that a representation in a brief, although "neither in a pleading nor an affidavit," nonetheless "may be treated as a [judicial] admission"); *see also Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1404 (7th Cir. 1997); *Slate Printing Co. v. Metro Envelope Co.*, 532 F. Supp. 431, 434-35 (N.D. Ill. 1982) (applying federal law in a diversity action to an issue about "judicial admissions" because it is procedural). Because the Court finds that plaintiffs' statement regarding the sale date was a judicial admission, Sears can only avoid the statutes bar if the warranty exception applies.

Sears argues that it does because SimplexGrinnell, in essence, warranted that the sprinklers had a useful life of at least fifty years when it agreed to perform its inspections in accordance with NFPA standards, which state that wet sprinklers in use for fifty years must be replaced or otherwise tested at ten-year intervals. (Pls.' LR 56(b)(3) Stmt. ¶¶ 16, 27; Pls.' Mem. Opp'n Defs.' Mot. Summ. J. 17.)

As previously stated, the warranty exception applies only to manufacturers and sellers. § 16.012. And, as described above, defendants have not established that SimplexGrinnell is either. (Pls.' LR 56(b)(3) Stmt. ¶ 34.) Further, even if the exception did apply, agreeing to inspect the sprinklers in accordance with certain standards is not the equivalent of an express written warranty of the sprinkler heads useful life as required under the statute. § 2.313 (stating that an express warranty is created by either a affirmation of fact or promise about the goods (such as stating the useful life), a description of the goods or a sample or model of the goods, that becomes part of the basis of the bargain); *see Elanco Prods. Co. v. Akin-Tunnell*, 474 S.W.2d 789, 792 (Tex. Civ. App. 1971) (holding that instructions that are not part of the basis of the bargain are not relevant in determining whether there was a breach of an express warranty).

Moreover, plaintiffs have offered no evidence that suggests Tyco made a warranty. Once defendants have established that the statute of repose applies, plaintiffs have the burden of establishing that it does not apply through the warranty exception. *White v. Cone-Blanchard Corp.*, 217 F. Supp. 2d 767, 775 (E.D. Tex. 2002) (holding that the Texas statute of repose barred plaintiff's claim where he could offer no evidence that contracted defendants' statement that no express warranty was ever made regarding the

useful life of the product at issue).  Because, plaintiffs' product liability and negligence claims against Tyco regarding the Texas stores are barred by the statute of repose, Tyco is entitled to judgment as a matter of law as to those claims.

###    B.    Negligence & Strict Liability

Plaintiffs allege that Tyco and/or SimplexGrinnell were negligent for failing to design, manufacture, test and distribute the sprinkler heads with ordinary and reasonable care.[6]  They also allege that Tyco and SimplexGrinnell are strictly liable for, among other things, manufacturing the allegedly defective sprinkler head.  It is undisputed that SimplexGrinnell did not design, manufacture or test the sprinkler heads.  (Defs.' LR 56(b)(3)(B) Stmt. ¶ 22; Pls.' LR 56(b)(3) Stmt. ¶ 34; Defs.' Ex. Q, Thomas McDonald Aff. 2-3.)  Thus, the Court grants defendants' motion for summary judgment with respect to plaintiffs' negligence and strict liability claims against SimplexGrinnell with regards to  designing, manufacturing and/or testing the sprinkler heads.

It is unclear, however, whether SimplexGrinnell was involved in distributing (*i.e.*, selling or otherwise placing into the stream of commerce) the sprinkler heads at issue. *See Reeves v. AcroMed Corp.*, 103 F.3d 442, 449 (5th Cir. 1997) (holding that to be strictly liable under a products liability theory one must be the manufacturer, seller or supplier of the defective product); *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 88 (Tex. 2004) (same); *Royer v. Catholic Med. Ctr.*, 741 A.2d 74, 77 (N.H. 1999) (same); *Gavula v. ARA Srvs., Inc.*, 756 A.2d 17, 20 (Pa. Super. Ct. 2000) (same); *Monte Vista*

---

[6] Plaintiffs also allege that defendants performed inspections negligently.  Defendants' duty to inspect was based on its contract with plaintiffs and, is therefore, governed by a different analysis described below.  *See supra* Part II.B (discussing plaintiffs' contract based claims).

*Dev. Corp. v. Superior Ct.*, 277 Cal. Rptr. 608, 611 (Ct. App. 1991) (same); *see also*

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 57 n.4 (Va.

1988) ("Virginia . . . does not permit tort recovery on a strict-liability theory in products-

liability cases.").  Because plaintiffs have not provided any evidence as to this point,

summary judgment is granted regarding the distribution-based negligence and strict

liability claims against SimplexGrinnell.

The Court now turns to the negligence and strict liability claims against Tyco for

the stores in Virginia, Louisiana, Pennsylvania, New Hampshire and California.   With

the exception of the incident in Pennsylvania, plaintiffs do not have the allegedly

defective activation mechanism, and therefore, must rely on circumstantial evidence to

prove the alleged defect.

### 1.     *Pennsylvania*

In Pennsylvania, a plaintiff need not prove negligence on the part of the

manufacturer, but must only establish that the product was defective, that the defect

existed at the time the product left the manufacturer's control, and the defect caused the

plaintiff's injury.  *Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 540 (Pa. 2009); *Carrecter v.

Colson Equip. Co.*, 499 A.2d 326, 330 (Pa. 1985) ("In a products liability action

negligence is not an element of the plaintiff's case, nor is the defendant's lack of

negligence a defense").  It is undisputed that plaintiffs' experts evaluated the activation

mechanism from the Pennsylvania store, and opined that it was defective because it

lacked sufficient solder bond at the time of manufacture, which caused the premature

activation of the sprinkler head.  (Pls.' LR 56(b)(3)(C) Stmt. ¶¶ 6, 9; Defs.' LR 56(a)(3)

Stmt. ¶ 26.)  Therefore, plaintiffs have created a genuine issue of material fact regarding whether there was a defect, and summary judgment is denied for the plaintiffs' strict liability and negligence claims regarding the Pennsylvania store.

>    2.    *Virginia*

Virginia does not recognize the doctrine of strict liability in product liability cases.  *See Sensenbrenner*, 374 S.E.2d at 57 n.4 ("Virginia . . . does not permit tort recovery on a strict-liability theory in products-liability cases."); *St. Jarre v. Heidelberger Druckmaschinen A.G.*, 816 F. Supp. 424, 427 (E.D. Va. 1993) (stating that "it is beyond question that Virginia does not recognize a cause of action for strict liability in tort").  Virginia only imposes strict liability in cases involving abnormally dangerous or ultrahazardous activities.  *See Richmond, Fredericksburg & Potomac R. Co. v. Davis Indus., Inc.*, 787 F. Supp. 572, 575 (E.D. Va. 1992).  The manufacture, design and distribution of fire sprinkler heads is not an abnormally dangerous or ultrahazardous activity under Virginia law.  *See Phillip Morris, Inc. v. Emerson*, 368 S.E.2d 268, 282 (Va. 1988) (holding that the storage and disposal of methane gas was not an abnormally dangerous activity where the risks could have been eliminated by use of reasonable care); *see also Warner v. Norfolk & W. Ry. Co.*, 758 F. Supp. 370, 371-72 (W.D. Va. 1991) (explaining that abnormally dangerous activities include blasting, oil-well drilling, exterminating insects and transporting explosives, but not operating a railroad) (citations omitted).  Therefore, summary judgment is granted with regards to plaintiffs' strict liability claim regarding the Virginia store.

To recover under a negligence action based on a defective product in Virginia, the plaintiff must establish that: (1) the goods contained a defect that made it unreasonably dangerous either for ordinary or foreseeable use; (2) the unreasonably dangerous condition existed when the goods left the manufacturer's hands; and (3) the defect actually caused plaintiffs' injury. *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420-21 (4th Cir. 1993) (citing *Logan v. Montgomery Ward & Co.*, 219 S.E.2d 685, 687 (Va. 1975)). A product is unreasonably dangerous if it is defective in assembly or manufacture. *See Austin v. Clark Equip. Co.*, 48 F.3d 833, 836 (4th Cir. 1995).

Defendants say that plaintiffs cannot show that the sprinkler heads were defective or caused plaintiffs' injuries because the sprinkler head was not recovered from the Virginia store, and thus plaintiffs' experts never examined it. To support this argument, defendants rely on *Logan*, in which the plaintiff brought a product liability action against the manufacturer and seller of a stove that exploded in plaintiff's house. 219 S.E.2d at 685. To prove that the stove was defective plaintiff invoked the doctrine of *res ipsa loquitor*, *i.e.*, relied solely on the fact that there was an explosion to prove that there was a defect. *Id.* at 687-88. There was no testimony (expert or otherwise) about other possible causes. *Id.* The court agreed that the evidence was insufficient to prove a product defect and affirmed the judgment in favor of defendants. *Id.* at 689.

The defendants' reliance on *Logan* is misplaced. In Virginia, negligence may be established by circumstantial evidence. *Sykes v. Langley Cabs, Inc*., 176 S.E.2d 417, 421 (Va. 1970). But when a key piece of evidence is not available, plaintiff must present evidence tending to negate all reasonable alternative explanations of the accident.

*See Bolling v. Montgomery Ward & Co.*, 930 F. Supp. 234, 238 (W.D. Va. 1996); *Lemons v. Ryder Truck Rental*, 906 F. Supp. 328, 332 (E.D. Va. 1995) (holding that plaintiff could escape summary judgment in product liability case where product was no longer available "only if his evidence tends to eliminate all reasonable possibilities that some other party or cause is to blame for the accident, or if the facts are such that no other inference but the existence of a defect in the [product] is reasonable").

Plaintiffs offered expert testimony that the sprinkler heads were defective due to insufficient soldering at the time of manufacture, which caused the premature activation (shortened life) of the sprinkler head. (Pls.' LR 56(b)(3) Stmt. ¶¶ 6, 9.) They also offered expert testimony that, after analyzing the seven stores at issue, the sprinkler heads did not activate from overheating and that any other possible explanations for the premature activations were ruled out through investigation. (*Id.* ¶ 7.)[7] Defendants offer no alternative explanation for the inadvertent activation of the sprinkler heads. Because plaintiffs have presented sufficient evidence tending to negate all reasonable alternative possibilities for the inadvertent sprinkler activations, the Court denies defendants' summary judgment motion as to plaintiffs' negligence claim.

3.      *Louisiana*

A claimant may only recover under the Louisiana Products Liability Act ("LPLA") for damages caused by a manufacturing defect. La. Rev. Stat. § 9:2800.54(A); *see State Farm Mutual Auto. Ins. Co. v. Wrap-On Co.*, 626 So.2d 874, 876 (3d Cir. 1993). To recover under the LPLA plaintiff must prove that the damage arose from a

---

[7] Although defendant disputes this fact, the dispute is unsupported by evidence in the record as required by Local Rule 56.1(b)(3)(B).

reasonably anticipated use of the product and that the product is unreasonably dangerous in, among other ways, its construction or composition (including manufacturing). § 9:2800.54. A product is unreasonably dangerous in its construction or composition, if, at the time it left the manufacturer's control, it "deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." § 9:2800.55.

Plaintiffs have presented circumstantial evidence and rely on the doctrine of *res ipsa loquitur* to establish that there was a manufacturing defect. *See Jurls v. Ford Motor Co.*, 752 So.2d 260, 265 (La. Ct. App. 2000) (holding that a manufacturing defect may be established by circumstantial evidence under the doctrine of *res ipsa loquitur*). In Louisiana, use of the doctrine *res ipsa loquitur* is appropriate if:

> (1) the circumstances surrounding the accident are so unusual that . . . there is an inference of negligence [or other fault] on the part of the defendant; (2) the defendant had exclusive control over the thing causing the injury; and (3) the circumstances are such that the only reasonable and fair conclusion is that the accident was [defendant's fault].

*Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1362 (La. 1992). The plaintiff bears the initial burden of showing that the theory applies. *Id.* But it is not necessary for the plaintiff to "negate all possible causes." *Williams v. Emerson Elec. Co.*, 909 F. Supp. 395, 398 (M.D. La. 1995). Rather, the plaintiff's burden is to present the court "with circumstantial evidence that excludes other reasonable hypotheses with a fair amount of certainty." *Id.*

Defendants argue that plaintiffs cannot establish the exclusive control element or negate all other reasonable possible causes of the inadvertent activations. The Court

disagrees. The "exclusive control" requirement is not strictly adhered to in Louisiana, and is satisfied "if the circumstances indicate that it is more probable than not that the defendant caused the accident and other plausible explanations do not appear to be the probable cause of the accident." *Spott*, 601 So.2d at 1362. In effect, Louisiana has conflated the "exclusive control" requirement with the third requirement of the *res ipsa loquitur* doctrine. *Id.* Therefore, because plaintiffs have provided evidence that tends to negate all other reasonable possible causes and explanations of the inadvertent sprinkler activations, they have met their burden for purposes of summary judgment.

4.    *New Hampshire*

In New Hampshire, plaintiff may bring a products liability action under either a theory of strict liability or negligence. To recover in a strict product liability case alleging a manufacturing defect, "the plaintiff must first prove the existence of a defective condition unreasonably dangerous to the user." *Thibault v. Sears, Roebuck & Co.*, 395 A.2d 843, 846 (N.H. 1978) (internal quotation omitted). A manufacturing defect occurs when the defect is an accidental variation caused by a mistake in the manufacturing process; that is, where the product does not "conform to the great majority of products manufactured in accordance with that design." *Id.* (quotation omitted). For a product to be unreasonably dangerous it "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Vautour v. Body Masters Sports Indus.*, 784 A.2d 1178, 1182 (N.H. 2001) (quotation omitted). To succeed on a negligent manufacturing claim, plaintiff must prove that defendant violated

its duty of care in the manufacturing of the sprinkler head and that the breach caused plaintiffs' injuries.  *See McConchie v. Samsung Elecs. Am., Inc.*, No. CIV 99-40-JD, 2000 WL 1513777, at *2-3 (D.N.H. Aug. 11, 2000) (stating that every manufacturer owes a legal duty "to use due care to avoid foreseeable dangers in its products") (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 501 (1996)); *Willard v. Park Indus., Inc.*, 69 F. Supp. 2d 268, 271 (D.N.H. 1999).

Where the plaintiff cannot identify the specific defect, the product defect may be proven through circumstantial evidence of malfunction and a lack of evidence of other causes.  *See, e.g.*, *Maku v. Am. Honda Motor Co.*, 835 F.2d 389, 392 (1st Cir. 1987); *see also Ricci v. Alt. Energy Inc.*, 211 F.3d 157, 162-63 (1st Cir. 2000) ("By the very nature of a fire, its cause must often be proven through a combination of common sense, circumstantial evidence and expert testimony.") (internal quotation omitted).  Here, as described in detail above, plaintiffs have provided sufficient circumstantial evidence of a manufacturing defect to survive summary judgment.

    5.    *California*

In California, to recover in strict liability, a plaintiff must prove that he was injured by a defect in the product and that the product was defective when it left the hands of the manufacturer.  *Ault v. Int'l Harvester Co.*, 528 P.2d 1148, 1150 (Cal. 1974). To recover in negligence the plaintiff must prove the same two elements plus an additional element--that the defect in the product was due to negligence of the defendant. *Crayton v. Rochester Med. Corp.*, No. 1:07-CV-1318, 2011 WL 475009, at *13 (E.D. Cal. Feb. 4, 2011).  A product may be found defective when it "does not conform to the

manufacturer's intended design."  *Carlin v. Superior Ct.*, 920 P.2d 1347, 1357 (Cal. Ct. App. 1996).  It is well settled that circumstantial evidence may be used to establish that a product was defective even when the product has been destroyed.  *Vandermark v. Ford Motor Co.*, 391 P.2d 168, 170 (Cal. Ct. App. 1964); *see Hughes Tool Co. v. Max Hinrichs Seed Co.*, 169 Cal. Rptr. 160, 164 (Ct. App. 1980).  Such evidence may be established by expert testimony and/or evidence of other accidents involving the product at issue as long as the circumstances of the other accidents are "similar and not too remote."  *Ault*, 528 P.2d at 1153 (finding that expert testimony about accidents regarding the same alleged defective product was admissible to prove defective condition, knowledge, or the cause of the accident).

Here, plaintiffs provided sufficient evidence to create a genuine issue of material fact that the activation mechanism was defective at the time of manufacture and that such defect caused the inadvertent activations.  Therefore, plaintiffs have satisfied their burden on summary judgment, and defendants' motion is denied as to this claim.

## II.  Plaintiffs' Contract Claims Against SimplexGrinnell

### A.  Breach of Contract

Plaintiffs argue that SimplexGrinnell breached two different agreements.  To establish a breach of contract claim under Illinois law, a plaintiff must show: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach

by the defendant; and (4) resultant damages.  *Reger Dev., LLC v. Nat'l City Bank*, 592

F.3d 759, 764 (7th Cir. 2010) (citing Illinois cases). [8]

### 1.    Protection Agreement

SimplexGrinnell argues that because there was no reference to F950 sprinkler

heads in either contract, it did not have a duty to warn about their possible defects.

(Defs.' Mem. Supp. Summ. J. 19.)  Plaintiffs argue that since no specific brand or model

of sprinkler head is listed under either contract, SimplexGrinnell's argument would

render the contracts meaningless.  (Pls.' Mem. Opp'n Defs.' Mot. Summ. J. 18-19.)  The

Court agrees.  The Protection Agreement required SimplexGrinnell to perform the

following with regard to sprinkler heads at Sears' stores in "strict conformance with the

highest industry practices and standards:"

- Inspect operations and conditions related to the sprinkler system in accordance with NFPA [National Fire Protection Agency] standards;
- Inspect and determine if the sprinkler system is in service and in satisfactory condition;
- Inspect reserve sprinkler head supply;
- Inquire as to changes in building status that may affect the performance and reliability of the sprinkler system; and
- Compile a complete report of inspection, explain any deficiencies and recommend corrective action to be taken according to recognized care and maintenance standards.

(Pls.' LR 56(b)(3) Stmt. ¶ 15.)  The Protection Agreement does not list any specific

sprinkler head or fire sprinkler system.   Therefore, because the contract would apply to

no sprinkler heads if interpreted the way defendants suggest, the contract can only

reasonably be interpreted as covering all the sprinkler heads that are part of Sears' fire

---

[8] The parties agree that Illinois law applies to both contracts.  (Defs.' Mem. Supp. Summ. J. 19; Pls.' Mem. Opp'n Defs.' Mot. Summ. J. 19.)

sprinkler system. *Krilich v. Am. Nat. Bank & Trust Co. of Chi.*, 778 N.E.2d 1153, 1164 (Ill. App. Ct. 2002) (holding that unless a contract defines a term, the court must give the language its common and generally accepted meaning); *see Wolfensberger v. Eastwood*, 889 N.E.2d 635, 638 (Ill. App. Ct. 2008) (holding that a court must not interpret a contract in a manner that will render any provision meaningless).

The contract requires SimplexGrinnell to "inspect sprinkler heads," explain any deficiencies," and "recommend corrective action" and perform all services that are "reasonably inferable as necessary to produce the results intended by this Agreement." (Pls.' LR 56(b)(3) Stmt. ¶ 15; Pls.' Ex. 6, Protection Agreement at 1, 11.) Plaintiffs argue that SimplexGrinnell breached the contract by failing to warn plaintiffs about the improper activations of F950 sprinkler heads or advising them to take any corrective knew or instituting measures to minimize the risk of potential damages. (Pls.' Mem. Opp'n Defs.' Mot. Summ. J. 20-21.) SimplexGrinnell argues that it did not breach its duty because it did not have actual knowledge of the improper activation.

The record establishes, however, that SimplexGrinnell had constructive notice of the activations of F950 sprinkler heads in the absence of fire. Constructive notice is defined in Illinois as "'[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of'" or "'notice presumed by law to have been acquired by a person and thus imputed to that person.'" *LaSalle Nat'l Bank v. Dubin Residential Cmtys. Corp.*, 785 N.E.2d 997, 1002 (Ill. App. Ct. 2003) (quoting Black's Law Dictionary 1088 (7th ed. 1999)). First, at least five years prior to the premature activations at issue here, premature activations of F950 sprinkler heads in the

absence of fire occurred in multiple sites across the country, including three owned and operated by the United States Government, one of SimplexGrinnell's largest customers,[9] and at various privately-owned commercial buildings. (Pls.' LR 56(b)(3) Stmt. ¶ 22; Pls.' Ex. 9, Sprinkler Hazard Alert, at 2-3.) In 2001, after the premature activations occurred at various government buildings, the United States Department of Energy issued a "Safety & Health Hazards Alert" about the "suspect deficiencies" of the F950 sprinkler heads manufactured between 1977 and 1985. (Pls.' Ex. 9, Sprinkler Hazard Alert, at 2-3.) Specifically, the Alert talks about inadvertent activations of the F950 sprinkler heads all over the country, beginning in 1987 and culminating in 2001, and that the failure rate of these sprinkler heads "clearly exceeds normal design expectations." (*Id.*) As a participant in the industry of inspecting and servicing fire sprinkler systems, SimplexGrinnell had a duty to know about the failure rate (and potential dangers and damages) of one of the products it services. This is especially true here given that such activation had such a direct impact on one of its largest clients. Because the record suggests that SimplexGrinnell had constructive notice of the problematic F950 activations, plaintiffs have created a triable issue as to whether SimplexGrinnell breached the Protection Agreement. (*Id.* ¶¶ 15-17, 22, 24.) Therefore, defendants' motion for summary judgment on that claim is denied.

## 2. Identification Agreement

Defendants argue that the F950 sprinkler heads were not part of the "Central Sprinkler Company Voluntary Replacement Program" ("VRP"), and therefore, the

---

[9] Although defendant disputes this fact, the dispute is unsupported by evidence in the record as required by Local Rule 56.1(b)(3)(B).

existence of F950 sprinkler heads did not trigger any action under the Identification Agreement. (Defs.' Reply Mem. Supp. Sum. J. 16.) The Identification Agreement required SimplexGrinnell to determine whether any sprinkler heads in Sears' stores fell under the VRP. (Pls.' LR 56(b)(3) Stmt. ¶ 19.) What is unclear, however, is whether the F950 model was covered under the VRP. Plaintiffs have not provided any evidence on this issue, such as what the VRP is and what sprinkler heads it covered (*i.e.*, F950 heads, recalled sprinkler heads, broken sprinkler heads, etc.). As such, plaintiffs have failed to create a triable issue of fact as to whether and to what extent SimplexGrinnell breached its duty to plaintiffs under the Identification Agreement, and therefore defendants' summary judgment motion is granted as to this claim.

### B. Negligence Based on Contractual Obligations

Plaintiffs argue that SimplexGrinnell owed a duty to plaintiff to perform the inspection and identification of sprinkler heads mandated by the parties' contract in a reasonable manner to protect plaintiffs from reasonably foreseeable damage. To state a cause of action for negligence in Illinois, plaintiff must establish that the "defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach." *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 441 (7th Cir. 2009) (quoting *Espinoza v. Elgin, Joliet & E. Ry. Co.*, 649 N.E.2d 1323, 1326 (Ill. 1995)). Where, as here, the negligence action is based on a contractual obligation, the scope of the duty is determined by the contract terms. *ExxonMobil Oil Corp. v. Amex Constr. Co.*, 702 F. Supp. 2d 942, 970 (N.D. Ill. 2010) (citing *Melchers v.*

*Total Elec. Constr.*, 723 N.E.2d 815, 818 (Ill. App. Ct. 1999)); *see also Dyduch v. Crystal Green Corp.*, 582 N.E.2d 302, 306 (Ill. App. Ct. 1991).

Defendants argue that this case is similar to *Eichengreen v. Rollins, Inc.*, in which the court found that plaintiff's allegations of negligence exceeded the scope of defendant's duties under the contract. 757 N.E.2d 952, 959-60 (Ill. App. Ct. 2001) (granting summary judgment for defendant on breach of contract and negligence claims for failure to install fire alarm equipment in a structure adjacent to a house because the contract only required defendant to install fire equipment in the house). The Court disagrees. The Protection Agreement explicitly requires SimplexGrinnell to provide fire protection services to all of Sears' stores, which includes inspecting the stores' sprinkler systems, determining if those systems were in satisfactory condition and recommending how to correct any deficiencies. (Pls.' LR 56(b)(3) Stmt. ¶ 15.) Thus, the record shows that SimplexGrinnell had a duty to plaintiffs.

The record, however, raises genuine issues of material fact as to whether SimplexGrinnell breached that duty under the circumstances here, and whether that breach was a proximate cause of plaintiffs' damages. (*Id.* ¶¶ 15-17, 22, 24.) Therefore, the Court denies summary judgment as to plaintiffs' negligence claim based on its contractual obligations against SimplexGrinnell.

## Conclusion

For the reasons stated above, the Court dismisses defendants Star Sprinkler, Inc. and Mealane Corporation as defendants [doc. no. 13] and grants in part and denies in part

defendants' summary judgment motion [doc. no. 128]. The Court grants the motion as to plaintiffs' negligence and strict liability claims against Tyco regarding the Texas stores, plaintiffs' strict liability claim against both defendants regarding the Virginia store, plaintiffs' negligence and strict liability claims against SimplexGrinnell based on manufacturing, designing, distributing and testing the sprinkler heads and the breach of contract claim against SimplexGrinnell regarding the Identification Agreement. In all other respects, the Court denies defendants' summary judgment motion. Therefore, the remaining claims are: (1) breach of contract against SimplexGrinnell regarding the Protection Agreement; (2) negligence (based on contractual obligation) against SimplexGrinnell; (3) negligence against Tyco for all stores at issue, except Texas; and (4) strict liability against Tyco for all stores at issue, except Texas and Virginia. The parties shall be prepared to set a date for the filing of the final pretrial order and a trial date at the next status hearing on July 13, 2011.

Dated:

**SO ORDERED**                    **ENTER: June 23, 2011**

_____
**RONALD A. GUZMAN**
**District Judge**